IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

Z-MAN PROPERTIES, LLC          )
                               )
        Plaintiff,             )
                               )
v.                             )          C.A. No.: CPU5-13-000601
                               )
FLORENCE GARRITY,              )
                               )
        Defendant.             )
                               )

Patrick Scanlon, Esq.                      Ms. Florence Garrity
203 NE Front Street, Suite 101             6236 Mud Mill Road
Milford, DE 19963                          Camden-Wyoming, DE 19934
Attorney for Plaintiff                     *Pro Se* Defendant

Submitted:      January 31, 2014
Decided:        March 7, 2014

**DECISION AFTER TRIAL**

This case involves a debt action filed by a landlord against a tenant. Plaintiff, Z-Man Properties, LLC, is seeking recovery from Defendant, Florence Garrity, for back rent and damage to its rental unit. The defendant contends that she does not owe the plaintiff any back rent and that she is not liable for the damage done to the rental unit because the unit was

vandalized. The Court heard the trial for this matter and reserved decision. After considering the evidence introduced at trial, the Court finds for the plaintiff and enters judgment against the defendant for $2,508.52 in damages, plus post judgment interest at the legal rate, and court costs.

## FACTS

The plaintiff entered into a one-year residential lease agreement for a town home with the defendant. The term of the lease ran from June 1, 2011, until May 31, 2012, with a monthly rent amount of $1,050.00, and a security deposit of $500.00. Pursuant to the rental agreement, when the lease expired on May 31, 2012, the agreement continued as a month to month tenancy at the market rate.[1] The defendant and a representative for the plaintiff are the only signatories to the rental agreement. The defendant is the only tenant named on the rental agreement. The parties also entered into a pet agreement whereby the defendant was permitted by the plaintiff to have two lab dogs at the residence. The agreement stated that the defendant accepted "full responsibility for the entire cost of any damage or injury to persons or property" caused by a pet. The defendant and a representative for the plaintiff are the only signatories to the pet agreement.

Before trial, the parties stipulated to the following. The defendant rented the town home from the plaintiff for her son, James Cox. The defendant originally resided in the rental unit, but had since moved out. Mr. Cox occupied the property for the last few months of the lease. The defendant paid rent for the month of June 2012 at the fair market value of $1,200.00. The defendant did not pay rent for the month of July 2012. The defendant did not return the keys for the rental unit to the plaintiff.

---

[1] Paragraph 2 of the lease agreement provided that upon expiration of the lease term, "the Agreement will continue on a month to month basis [sic], at Market Rent, or Tenant may renew for additional one (1) year at Market rent, unless automatically terminated . . . ." Pl.'s Ex. 3 at 1.

2

Based on the evidence introduced at trial, along with the reasonable inferences resulting therefrom, the court finds the relevant facts to be as follows.

On or about June 2, 2012, Mr. Cox went to the plaintiff's leasing office and attempted to renew the defendant's lease for a second one-year term. An employee for the plaintiff notified Mr. Cox that he could not renew the lease because he was not a named tenant on the rental agreement. It is at this time that Mr. Cox gave the plaintiff oral notice that he would be vacating the town home; however, he never gave an exact date. Mr. Cox paid the rent owed for June 2012 with a check. The defendant did not renew the lease.

On or about June 28, 2012, Mr. Cox moved out of the town home; however, certain bulky "trash" items and some personal papers were left in the unit. Mr. Cox did not have room left to pack the bulky trash items in his vehicle on June 28, 2012, and he did not dispose of the items in the communal dumpster because it was raining and the dumpster was full. The plaintiff had no indication that Mr. Cox had moved out of the town home on June 28, 2012, because Mr. Cox never returned possession of the four keys[2] to the rental unit and his motorcycle remained parked in the space designated for the town home throughout the month of July.

At some point in mid July, the plaintiff was informed that the defendant was vacating the town home, but the defendant never returned the keys to the unit. On or about July 20, 2012, the plaintiff's property manager conducted a routine inspection of the unit. During her inspection, the property manager discovered the trash items left by Mr. Cox and noted that there appeared to be dog feces in the carpet of the unit. No other damage was noted at this time. On or about July 23, 2012, the property manager called the defendant to inquire if she had finished moving and to

---

[2] At trial the property manager testified that it was the plaintiff's standard procedure to have four keys made for each unit. At least one key for each unit was to remain in the plaintiff's possession; however, at some point Mr. Cox retained possession of all four keys belonging to the unit.

3

inform her that a charge against her security deposit would be made for the removal of the items left in the unit unless the defendant removed them. The defendant told the property manager that she would speak to Mr. Cox about removing the remaining items.

On or about July 24, 2012, Mr. Cox went back to the unit with a friend to remove the remaining trash items. Upon arrival, Mr. Cox testified that he found the front door to the unit unlocked and extensive damage to the interior of the unit. Mr. Cox exited the unit and notified the property manager and the police. Once the police officer arrived, Mr. Cox, the property manager, and the officer conducted a walk-through of the rental unit. The unit was substantially damaged. In addition to the dog feces observed by the property manager on her earlier inspection, other damage included punctures and holes in several walls, closet doors ripped off the hinges, trim ripped off of the wall, a broken banister, a cut screen door, and items of trash strewn around the unit.

Mr. Cox testified that during the walk-through with the property manager and the police officer, he and his friend were able to pull open the sliding glass door while the lock was still engaged. At trial, the property manager denied observing this happen. However, she stated that Mr. Cox did inform her the day of the vandalism about the sliding glass door. The maintenance supervisor later reported to her that he did not find a problem with the door. The property manager informed the police that she believed Mr. Cox destroyed the unit. Alternatively, Mr. Cox contends that the damage was done by vandals. The trash items were never removed from the unit.

## DISCUSSION

### I.  Abandonment

Title 25, section 5106 of the Delaware Code states that "[w]here the term of the rental agreement is month-to-month, the landlord or tenant may terminate the rental agreement by

4

giving the other party a minimum of 60 days' written notice, which 60-day period shall begin on the first day of the month following the day of actual notice." DEL. CODE ANN. tit 25, § 5106(d). Abandonment occurs when a tenant "wrongfully quits the rental unit and unequivocally indicates by words or deeds the tenant's intention not to resume tenancy." DEL. CODE ANN. tit 25, § 5507(d). "Under Delaware law, a lessor must establish a lessee's intent to abandon the leasehold property and an act on the part of the lessee evidencing such intent in order to establish abandonment." *Cline v. Willis*, 1988 WL 116419, at *1 (Del. Super. Oct. 11, 1988) (citing *Bank of Delaware v. Claymont Fire Co. No. 1*, 528 A.2d 1196, 1198 (Del. 1987). Abandonment is a question of fact. *Id.*

In this case, the defendant had legal possession of the rental unit on July 24, 2012. At trial, the defendant agreed that written notice of termination was never given to the plaintiff. Instead, Mr. Cox gave oral notice of the defendant's intention to terminate to an employee of the plaintiff on June 2, 2012. However, both § 5106 and the rental agreement expressly require a month-to-month tenant to give 60 days written notice to terminate tenancy.[3] Therefore, the termination period did not begin on June 2, 2012, when Mr. Cox gave oral notice because notice of termination must be in writing[4] and it cannot be for some future unspecified date.

---

[3] The parties' rental agreement states "either party may terminate this Lease at the end of the initial term, or any time prior to the end of the initial term, or successive terms by giving notice to the other party no less than sixty (60) days prior to termination date." Pl.'s Ex. 3 at 5. In a prior section, the agreement specifies that notice must be in writing in order to receive a refund of the security deposit. Pl.'s Ex. 3 at 2.

[4] It should also be noted that Mr. Cox had no authority to give the plaintiff notice of termination of the tenancy because Mr. Cox was not a named tenant on the rental agreement. At trial, the defendant alleged that her son was a co-tenant on the lease. The plaintiff introduced the *rental application* signed by both the defendant and Mr. Cox. The rental application identified the defendant as the "applicant" and Mr. Cox as the "co-applicant." However, the only tenant identified on the *rental agreement* is the defendant and only the defendant's signature appears on the rental agreement. Therefore, while Mr. Cox was permitted to dwell in the rental unit, he was not considered by the plaintiff to be a tenant, as stated in the parties' rental agreement. *See* Pl.'s

Assuming, arguendo, that the defendant did give proper written notice on June 2, 2012, both § 5106 and the parties' rental agreement expressly state that notice must be given at a *minimum* of 60 days prior to the date of termination. Additionally, § 5106 specifies that the notice period begins to run on the first day of the month following actual notice. Therefore, if the defendant gave written notice on June 2, 2012, the tenancy would not terminate until August 31, 2012. In either case, it is clear that the defendant had legal possession of and an obligation to pay rent for the unit through July and August of 2012. Therefore, any evidence that the defendant vacated the rental unit prior to August 31, 2012, without providing written notice of the specific date she was moving out of the unit is proof of abandonment.

The defendant contends that Mr. Cox had completely moved out of the rental unit on June 28, 2012, and that the items remaining in the unit were trash. The plaintiff's property manager testified that she was not informed until late July of 2012 that the defendant was vacating the property. On July 20, 2012, when the property manager entered the defendant's rental unit to inspect the premises, she testified that she believed the unit was still being occupied. However, the defendant adamantly opposes this assessment, presenting evidence that Mr. Cox had no intention of returning to the rental unit after June 28, 2012, to remove the trash items and only did so after the defendant was contacted by the property manager and informed that the defendant's security deposit would be charged to remove the remaining items. Therefore, the Court concludes that the defendant abandoned the rental unit on June 28, 2012.

---

Ex. 3 at 4 (stating "[t]he tenant shall use the premises only as a private dwelling for himself/herself and the individuals listed on the application. The Tenant(s) agrees to permit other individuals to reside in the unit only after obtaining the prior written approval of the Landlord."). As a result, the Court does not consider Mr. Cox as a tenant in its analysis.

6

## II. Liability

In a claim for damages to rental property, the landlord must prove by a preponderance of the evidence that the damage is attributable to the tenant and is not a result of normal wear and tear. *BRG, LLC v. Brinsfield*, 2010 WL 1413004, at *2 (Del. Com. Pl. Mar. 4, 2010); *see* DEL. CODE ANN. tit 25, § 5514(c). Pursuant to the Delaware Code, a tenant is obligated to not "willfully or wantonly destroy, deface, damage, repair or remove any part of the structure or rental unit or the facilities, equipment or appurtenances thereto, nor permit any person on the premises with the tenant's permission to do any such thing." DEL. CODE ANN. tit 25, § 5503(6).

Generally, a tenant is not liable for damage to the rental property resulting from "fire or casualty" if such damage occurs "without fault on the part of the tenant, or a member of the tenant's family, or another person on the premises with the tenant's consent." DEL. CODE ANN. tit 25, § 5309(a). However, "[a]bandonment of property is an invitation to vandalism . . . ." RESTATEMENT (SECOND) OF PROP.: LAND. & TEN. § 12.1 cmt. i (1977). "Even though the damage to the leased property is caused by a third person who is wrongfully on the leased property, the conduct of such third person may be attributable to the tenant . . . if the tenant's conduct encouraged the wrongful invasion of the leased property by the third person." RESTATEMENT (SECOND) OF PROP.: LAND. & TEN. § 12.2 cmt. g (1977). According to the Restatement (Second) of Property:

> A tenant who abandons the leased property is in default, whether the landlord terminates the lease or not. Consequently, in addition to other rights the landlord has against the tenant, as long as he does not duplicate recoveries, he is entitled to recover from the tenant the damages he has sustained as a result of the abandonment. Damage due to vandalism while the leased property is vacant, which occurs before the landlord has had a reasonable opportunity to take appropriate steps to protect the property against vandalism, is attributable to the tenant and such damage is recoverable from the tenant . . . .

RESTATEMENT (SECOND) OF PROP.: LAND. & TEN. § 12.1 cmt. i (1977).

In this case, the plaintiff has established by a preponderance of the evidence that the defendant abandoned the rental unit.[5] Therefore, any damage, beyond normal wear and tear, resulting to the unit by third party vandals is attributable to the defendant.

The Court acknowledges that pursuant to title 25, section 5507(d) of the Delaware Code, the plaintiff has a duty to mitigate damages when a tenant abandons a rental unit. DEL. CODE ANN. tit 25, § 5507(d). However, the Court also acknowledges that pursuant to the defendant's actions, the plaintiff reasonably believed that Mr. Cox continued to inhabit the rental unit throughout the month of July. At trial, the plaintiff's property manager testified that she observed Mr. Cox's motorcycle parked in the parking spot assigned to the rental unit through the month of July. The defendant argued that Mr. Cox gave oral notice of his intent to terminate the lease agreement; however, notice was not provided in writing and the plaintiff had no reason to believe that the defendant would vacate the unit prior to the 60 day notice period. The property manager admitted that she received notice that the defendant had moved out of the rental unit at some point in late July; however, the property manager subsequently inspected the unit and found items inside leading her to believe the unit was still inhabited. Additionally, neither the defendant nor Mr. Cox returned possession of the keys to the plaintiff. The Court concludes that the plaintiff had no reason to believe mitigation was necessary at the time the alleged vandalism occurred.

---

[5] It should also be noted that even if the Court were to assume, arguendo, that the rental unit had not been abandoned, the defendant would still be liable for the damages to the rental unit for two reasons. First, it has been clearly established that the defendant had a legal right to possess the unit through August 31, 2012. Second, the defendant failed to provide the Court with credible evidence of forced entry or other evidence to support the defendant's contention that the rental unit had been vandalized. In the absence of evidence to the contrary, the Court believes that the plaintiff has also demonstrated by preponderance that Mr. Cox and/or the defendant are responsible for the damage to the rental unit.

## III. Damages

When a tenant is found to abandon their lease, the Delaware Code states that the landlord may recover the "entire rent due for the remainder of the term and expenses for actual damages caused by the tenant (other than normal wear and tear) which are incurred in preparing the rental unit for a new tenant . . . ." DEL. CODE ANN. tit. 25, § 5507(d). Normal wear and tear is defined as "the deterioration in the condition of a property or premises by the ordinary and reasonable use of such property or premises." DEL. CODE ANN. tit. 25, § 5141(19).

In this case, the plaintiff has requested a long list of damages. At trial, it was established that several charges requested by the plaintiff were for items not attributable to the defendant's rental unit. Additionally, it was established that several of the charges claimed by the plaintiff were for painting and cleaning, otherwise designated as costs associated with normal wear and tear on the property. The Court has taken into consideration all the damages claimed by the plaintiff and finds that it has proven the following damages by a preponderance of the evidence for which the defendant is liable:

| | |
|---|---|
| Unreturned Keys[6] (4 total) | $ 20.00 |
| Trash Removal | $ 175.00 |
| Carpet Cleaning Beyond Normal Wear and Tear (deep soil extraction, red stain removal, bleach spots, deodorizer) | $ 255.00 |
| Labor to Repair Damages | $ 750.00 |
| Replacement Bi-fold Door, Handrail, Drywall Screws and Wall Board, Mini Blinds, Toilet Seats (3), and Cabinet Doors | $ 378.09 |
| Shoe Guards and Coveralls[7] | $ 28.43 |

---

[6] The rental agreement signed by both parties states that "[t]he Landlord may charge the Tenant $5.00 for each key not returned." Pl.'s Ex. 3 at 3.

[7] Proven at trial by the plaintiff as a necessary expense due to the extent of the damage to the rental unit.

| | | |
|---|---|---|
| Less: Security Deposit Credit | ($ 500.00) | |
| Total Due for Damages | | $1,106.52 |
| Back Rent for July 2012:[8] | $1,200.00 | |
| 5% Monthly Rent Late Fee: | $ 60.00 | |
| Unpaid Utilities | $ 142.00 | |
| Total Due for Unpaid Rent and Expenses | | $1,402.00 |

**TOTAL DUE**      **$2,508.52**

The Court finds that the defendant is liable to the plaintiff for damages, minus the amount of the security deposit, in the amount of $1,106.52, plus back rent, late fees, and unpaid utility expenses in the amount of $1,402.00, plus post judgment interest at the legal rate and court costs.

## CONCLUSION

As a result of the Court's finding of fact, which is based upon the entire record, including all direct and circumstantial evidence, and all references resulting therefrom, and the Court's above-referenced conclusions of law, the Court enters judgment for the plaintiff and against the defendant in the amount of $2,508.52 for damages to the rental unit and unpaid rent and utility expenses, plus post judgment interest at the legal rate and court costs.

**IT IS SO ORDERED this 7th day of MARCH, 2014.**

CHARLES W. WELCH
JUDGE

---

[8] The plaintiff only requested back rent for July of 2012; however this does not change the Court's analysis regarding the defendant's potential obligation for rent through August of 2012, under Delaware law.